CITY OF OMAHA V. JAMES G. MEGEATH ET AL.

FILED NOVEMBER 20, 1895. No. 5893.

1. **Municipal Corporations:** IMPROVEMENT OF STREETS: LIA-
BILITY OF ABUTTING OWNERS. Where a strip of ground surrounding a tract of land designed for a public park was conveyed by parties who owned other land outside of and abutting upon the said strip upon the express conditions in the deed of

conveyance, that the grantee should lay out and improve said strip as a street and forever after keep the same in good repair and order at its own expense, such city, for improving or keeping in repair such street, cannot require payment by its grantors because of their ownership of the aforesaid abutting property, and the same exemption from liability exists in favor of one who has since purchased a part of said abutting property.

2.  ———: ———: INJUNCTION. Under the above circumstances an injunction will lie to restrain a sale being made by the city of any of the abutting property aforesaid, and against the collection from any owner of such adjacent property, of the cost of improving or of keeping in repair any portion of said street.

ERROR from the district court of Douglas county. Tried below before DAVIS, J.

The facts are stated by the commissioner.

*W. J. Connell*, for plaintiff in error:

The contract made by the giving and acceptance of the deed with the condition as written was such that it could benefit only the grantors and their heirs. The form of the contract is well known to the law, and it is equally well known that under such a contract no third parties, under any circumstances, can derive any benefits or legal rights whatever. In addition to the intention which the law imputes to the grantors from the peculiar form of the contract adopted by them, the deed on its face, and in express terms, confines all benefits reserved by the condition to the parties executing the instrument, and their heirs. A breach of the condition named in the deed cannot be enforced in a court of equity, because equity will not enforce forfeitures, and because, for a breach of such conditions, the party entitled to sue has an adequate remedy at law. The defendants, having full notice of the exact form of the agreement created by the deed, are presumed to know its legal effect was to confine all benefits arising thereunder to the grantors and their heirs, and that, therefore, no acts of the city done

in fulfillment of the contract could create an estoppel in favor of the defendants. (*Chute v. Washburn*, 46 N. W. Rep. [Minn.], 555; *McElroy v. Morley*, 19 Pac. Rep. [Kan.], 341; *Bangor v. Warren*, 34 Me., 329; *Hooper v. Cummings*, 45 Me., 359; *Warner v. Bennett*, 31 Conn., 468; *Schulenberg v. Harriman*, 21 Wall. [U. S.], 63; *Ruch v. City of Rock Island*, 97 U. S., 693; *Guild v. Richards*, 82 Mass., 317; *Skinner v. Shepard*, 130 Mass., 180; *Cross v. Carson*, 8 Blackf. [Ind.], 138; *Fonda v. Sage*, 46 Barb. [N. Y.], 122; *Southard v. Central R. Co.*, 26 N. J. Law, 21; *Norris v. Milner*, 20 Ga., 563; *Smith v. Brannan*, 13 Cal., 107; *Nicoll v. New York & E. R. Co.*, 12 N. Y., 132; *Jones v. St. Louis, K. C. & N. R. Co.*, 79 Mo., 97; *Martin v. Skipwith*, 6 S. W. Rep. [Ark.], 516; *Missouri Historical Society v. Academy of Science of St. Louis*, 8 S. W. Rep. [Mo.], 346; *Messersmith v. Messersmith*, 22 Mo., 372.)

*Kennedy & Learned, contra:*

The execution, delivery, and acceptance of the deed constituted a contract between the parties. (*Cooper v. Foss*, 15 Neb., 516; *Shamp v. Meyer*, 20 Neb., 223; *Keedle v. Flack*, 27 Neb., 836; *Stover v. Tompkins*, 34 Neb., 465; *Hayne v. Cummings*, 16 C. B., n. s. [Eng.], 20; *Dunlap v. Mobley*, 71 Ala., 102; *Paschall v. Passmore*, 15 Pa. St., 295; *Wier v. Simmons*, 55 Wis., 637; *People v. Gosper*, 3 Neb., 285; *Hamilton v. Thrall*, 7 Neb., 210; *Newlean v. Olson*, 22 Neb., 717; *Whitney v. Union R. Co.*, 11 Gray [Mass.], 363.)

As to the burdens assumed by the city with respect to the avenues, and as to the construction of the contract by the parties, the following cases were cited: *City of Chicago v. Sheldon*, 9 Wall. [U. S.], 50; *School District v. Estes*, 13 Neb., 52; *Harbach v. Miller*, 14 Neb., 9; *Rathbun v. McConnell*, 27 Neb., 239.

The city had power to make the contract and relieve the

property in question from special assessments for local improvements. (*State v. Wilson*, 7 Cranch [U. S.], 164; *Home of the Friendless v. Rouse*, 8 Wall. [U. S.], 430; *Tomlinson v. Branch*, 15 Wall. [U. S.], 460; *First Division St. Paul & P. R. Co. v. Parcher*, 14 Minn., 224; *McGee v. Mathis*, 4 Wall. [U. S.], 143; *City of Chicago v. Sheldon*, 9 Wall. [U. S.], 50; *City of Dayton v. Pease*, 4 O. St., 100; *Argenti v. City of San Francisco*, 16 Cal., 256; *Allegheny City v. McClurkan*, 14 Pa. St., 81; *Hitchcock v. City of Galveston*, 96 U. S., 341; *Caldwell v. Rupert*, 10 Bush [Ky.], 179; *Craycraft v. Selvage*, 10 Bush [Ky.], 696; *Maher v. City of Chicago*, 38 Ill., 267; *City of Chicago v. People*, 56 Ill., 327; *Fisher v. Prowse*, 2 Best & S. [Eng.], 770; *Boughner v. Clarksburg*, 15 W. Va., 394; *Humphrey v. Pegues*, 16 Wall. [U. S.], 244; *Wilmington R. Co. v. Reid*, 13 Wall. [U. S.], 264; *Farrington v. Tennessee*, 95 U. S., 679; *Dodge v. Woolsey*, 18 How. [U. S.], 331; *Pacific R. Co. v. Maguire*, 20 Wall. [U. S.], 36; *Northwestern University v. People*, 99 U. S., 309; *O'Donnell v. Bailey*, 24 Miss., 386; *Grand Gulf R. Co. v. Buck*, 53 Miss., 246; *Atwater v. Woodbridge*, 6 Conn., 223; *Landon v. Litchfield*, 11 Conn., 250.)

The agreement was to run with the land for the benefit of subsequent purchasers. (*State v. Wilson*, 7 Cranch [U. S.], 164; *McGee v. Mathis*, 4 Wall. [U. S.], 155; *Tomlinson v. Branch*, 15 Wall. [U. S.], 465; *Duffy v. New York & H. R. R. Co.*, 2 Hilton [N. Y.], 496; *Morse v. Aldrich*, 19 Pick. [Mass.], 449; *Kellogg v. Robinson*, 6 Vt., 276; *Birdsall v. Tiemann*, 12 How. Pr. [N. Y.], 551; *Trustees of Watertown v. Cowen*, 4 Paige Ch. [N. Y.], 510; *Barrow v. Richard*, 8 Paige Ch. [N. Y.], 351; *Whatman v. Gibson*, 9 Simons Ch. [Eng.], 196; *St. Andrews Lutheran Church's Appeal*, 67 Pa. St., 512; *Hills v. Miller*, 3 Paige Ch. [N. Y.], 254; *Winfield v. Henning*, 21 N. J. Eq., 188; *Whitney v. Union R. Co.*, 77 Mass., 359; *Merrifield v. Cobleigh*, 4 Cush. [Mass.], 178; *Astor v.*

*Miller,* 2 Paige Ch. [N. Y.], 68; *Van Horn v. Crain,* 1 Paige Ch. [N. Y.], 455.)

The defendants in error had a right to bring and maintain this action, not only because the contract was made for their benefit, but to prevent illegal and unauthorized burdens being cast upon their lots. (*State v. Birkhauser,* 37 Neb., 521; *Pacific Bridge Co. v. Kirkham,* 54 Cal., 558; *Butler v. Board of Supervisors of Saginaw County,* 26 Mich., 22; *In re Rhinelander,* 68 N. Y., 105; *Brush v. City of Detroit,* 32 Mich., 43; *City of Leavenworth v. Laing,* 6 Kan., 274; *Philbrook v. Kennebec,* 17 Me., 196; *Lattimer v. Livermore,* 72 N. Y., 174.)

*John M. Thurston,* also for defendants in error.

RYAN, C.

This action was brought in the district court of Douglas county by the owners of certain lots for a decree perpetually restraining the city of Omaha from collecting certain assessments upon the property of the petitioners lying contiguous to streets which surround Hanscom Park. The parties who sought the relief aforesaid, under A. J. Hanscom and James G. Megeath, the original proprietors of the whole tract, were owners by *mesne* conveyances of lots described as owned by each petitioner respectively. There was a decree as prayed, and the review of this judgment is sought by the city of Omaha upon its petition in error. There was no bill of exceptions, hence we must assume that each fact well pleaded in the petition was established by sufficient competent proof, and we are equally bound to assume the failure to prove all essential affirmative propositions contained in the answer.

It was alleged in the petition that the city of Omaha, prior to November 7, 1872, entered into negotiations with Andrew J. Hanscom and James G. Megeath for the purpose of securing from them and their wives a portion of their

land to be used by said city as a public park.   It was further
averred that the result of said negotiations was that a deed
was made by A. J. Hanscom and James G. Megeath, their
wives joining therein, to the city of Omaha, on November 7,
1872, of grounds for a park and a street around it; that the
grantors named received no consideration for making said
deed, except the benefit which would accrue to the remain-
ing real estate of the grantors by reason of the location,
improvement, and maintenance of said public park and the
street or avenue surrounding the same; that the chief in-
ducement moving said grantors to donate and convey said
property was that the performance of the city on its part
of all the terms and conditions contained in said deed
would enable said grantors to lay out the remaining por-
tion of their several tracts of land into lots and blocks front-
ing and abutting on the street or avenue lying adjacent to
and surrounding said park; that said property fronting and
abutting on said avenue around said park, by reason of said
conditions that the said city would improve and keep in re-
pair said avenue and park, would be more desirable for resi-
dence and other purposes; that it was well understood by the
city of Omaha at the time it received and accepted said
conveyance that said deed was executed by grantors for
and in consideration of the benefits aforesaid which would
attach especially to the lots and land fronting and abutting
upon the avenue around said park.   It was further alleged
in the petition that by the acceptance of the aforesaid con-
veyance the city of Omaha was bound by the requirements
of the deed whereby said conveyance was made, and that
at the time of said conveyance the grantors therein named
owned all the property adjacent to and facing upon the
avenue surrounding Hanscom Park, and that, relying upon
the faithful performance by the city of Omaha of all the
terms and conditions of their said deed, the aforesaid grant-
ors proceeded to lay out, subdivide, and plat all of the said
real estate fronting and abutting upon said avenue around

said park into lots; that by *mesne* conveyances the petitioners in the district court had become owners of certain of these several lots, as in the petition described, and that, thereby, all of the conditions of the said conveyance to the city of Omaha inured to the benefit of the several owners of the aforesaid lots. It has already been indicated what relief was sought against the plaintiff in error, and against what threatened invasion of the rights of the several property owners, who joined in asking relief against the city, such relief was prayed. It is not necessary that the conditions attached to that part of the conveyance, affecting only the public park grounds, should be set out at length. For our purposes it is sufficient to refer to that part of the deed which vested in the city of Omaha the title to a strip of land eighty feet wide, which surrounded said park, for a highway or public street, and, in connection therewith, to quote the conditions affecting the same. In respect to this strip the language of the conditions was as follows: "Upon these express conditions, that it shall be forever used and occupied as a public street or highway, and that the said city of Omaha shall lay out and improve said street or highway, and shall forever keep the same in good order and repair, at the expense of said city of Omaha; and in case of failure or neglect to comply with any or all of said conditions, then, and in that case, the title to said street or highway shall revert back and reinvest in the parties of the first part, their heirs or assigns, according to their original interests."

The city of Omaha, it was alleged in the petition, had caused the highway or street surrounding Hanscom Park to be paved, and there was raised no question that this paving was properly done, and that, as done, it was in compliance with the requirement that the city should improve said highway and keep the same in good order and repair. Plaintiff in error, however, insists that the sole remedy available to any one was by re-entry for condition

broken, and this, it was contended, resulted from the provisions of the deed itself. It was argued that the law abhors forfeitures, and that, even if a right to enforce a forfeiture existed, it must be denied to the defendants in error, because, by law, the right of re-entry for condition broken is limited to the grantors and their heirs. For the purposes of this case it might be conceded that the provisions of the deed under consideration amount to conditions subsequent, and that it therefore results that for any breach of these conditions there is available only one remedy,—a right of re-entry for conditions broken limited to the grantors and their heirs. In this case these propositions could have no applicability, for by the original petition no breach was alleged. Practically, it was therein conceded that the city, in paving as it had, had complied with the conditions imposed upon it by the provisions of the deed. The grounds of complaint were that the city, after having so paved the streets around the park, was attempting to compel payment for a part of such paving by the owners of lots which front upon this paved street. There was in the deed to the city no condition that, if it sought to compel payment in this manner, the original grantors of such street to the city, or any one else, might re-enter as for breach of a condition subsequent. Indeed, there is in the deed no recognition of a possibility of the assertion of such a right of the city to repayment of the expenses incurred, either in improving or keeping in repair this highway or street. As against the original grantors, the city could not consistently have required that its title should be recognized, and at the same time have insisted, in the face of the above conditions, that such grantors should improve and keep in repair, or, what amounts to the same thing, pay for improvements and repairs already made. Against such an attempt to ignore its obligations, no redress was provided in the deed. As against an attempt by the exercise, under the circumstances, of its power of taxation to compel such grantors to pay for

such improvements or repairs of the street, which the city, upon sufficient consideration, was bound to make, a court of equity would decree proper relief. This does not seem seriously to be questioned by the plaintiff in error, but its objection, apparently, is that the defendants in error are not entitled in this respect to be subrogated to the rights and remedies of the original grantors of the street to the city. In *Fisher v. Beard,* 32 Ia., 346, H. P. Scholte, the original proprietor of a tract of land, had designated upon the plat thereof a certain square as a public park, and had sold lots facing said square to parties who had relied upon such proprietor's representation that the said square would always be a public park. Afterwards, the designation "Public Park" was, by the proprietor, changed on the plat to "Garden Square," and still other lots facing thereon were sold upon the faith of representations by said proprietor made, that the aforesaid square should forever remain a public park. Subsequently, the original proprietor, without consideration therefor, conveyed the square in question to his wife, who, after his death, became the wife of R. H. Beard. It was alleged in a petition for an injunction that some of the plaintiffs were owners of lots facing this square by virtue of deeds from Scholte and his wife, while others of the petitioners had purchased their lots from the grantees of Scholte, and that the defendant, Mrs. Beard, was about to lay off the aforesaid square into lots and sell the same for the erection thereon of buildings for the different purposes of trade and business, to the prejudice and injury of all the plaintiffs. An injunction against the threatened injuries was, by the supreme court of Iowa, held proper, in favor not only of the original purchasers, but as well in favor of their grantees. In the discussion of this case, Miller, J., delivering the opinion of the court, said: "The right or easement acquired by the original purchasers from Scholte became affixed to the lots fronting on the square, in the nature of a covenant running with the land, and passed

to subsequent grantees of the lots, without any special assignment or conveyance thereof. Whoever purchased one of these lots to which the easement was attached became entitled thereto, and whoever became the grantee of the square upon which this easement was a burden, with notice thereof, would take the same burdened with the easement." In *Trustees of the Village of Watertown v. Cowen,* 4 Paige Ch. [N. Y.], 510, it was held that the grantee of a lot adjoining a public square, who had a special covenant from his grantor, a former owner of the lot, that the square should be kept open for the benefit of his lot and should not be built upon, might file a bill in equity to restrain his grantor from violating this covenant. These principles we have not found questioned in any adjudicated case, and most certainly they are just and equitable. The facts of the case at bar fall within the reason of these rules, and accordingly they should be applied. The city of Omaha, when it accepted the grant of the highway surrounding Hanscom Park, did so subject to the conditions expressed in the deed of conveyance of such highway. Since the city has become vested with this title there has arisen no occasion or justification for resort to a remedy by re-entry, for no condition subsequent has been violated. There has, however, been an attempt to compel the owners of lots fronting upon such highway to pay for what the city was bound itself, upon a sufficient valuable consideration, to do. By virtue of its right to levy taxes and assessments the city is able to do this injustice without resort to the courts. The parties, whose rights are invaded in this manner, have no remedy by virtue of a right of re-entry, or what has been by some courts recognized as a substitute therefor—an action of ejectment. In *Morris v. Merrell,* 44 Neb., 423, the rule laid down was that "where public officers are proceeding illegally under claim of right, they may be enjoined," and in support of this proposition several adjudicated cases were cited. The same redress is available against attempts to

do what the city by its contract obligations is bound not to do, as was above announced by this court with regard to proceedings in other respects illegal. The judgment of the district court was right and is

AFFIRMED.